UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CIVIL DIVISION

ANTHONY HINES                                  )
                                               )
      Plaintiff,                               )
                                               )  No. 05-2187 (RBW)
v.                                             )

CORRECTIONS CORPORATION OF
AMERICA

and

DISTRICT OF COLUMBIA, Defendant and
Third Party Plaintiff

v.

CENTER FOR CORRECTIONAL
HEALTH AND POLICY STUDIES, INC.
Third Party Defendant.

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE MOTION FOR SUMMARY JUDGMENT OF THIRD PARTY DEFENDANT, CENTER FOR CORRECTIONAL HEALTH & POLICY STUDIES,**

COMES NOW, Third Party Defendant, The Center for Correctional Health & Policy Studies, Inc. ("CCHPS"), through counsel, Leo A. Roth, Jr, Esquire and Brault Graham, P.L.L.C., and in support of its Motion for Summary Judgment, files this Memorandum of Points and Authorities:

This lawsuit arises from Plaintiff's allegations that he was not given blood pressure medications during a period of time in April 2003, while incarcerated at the DC Jail/Correctional Treatment Facility. That as a result, he fell in the shower room and suffered personal injuries. He alleges assault, battery, negligence, intentional infliction of emotional distress, and Civil Rights violations under 42 U.S.C. 1983.

Plaintiff originally filed this matter in the Superior Court for the District of Columbia on August 11, 2005, against Corrections Corporation of America, Inc. (CCA), the District of Columbia Government (D.C. Department of Corrections), Jane or John Doe, Corrections Corporation of America (CCA), and Tabitha Braxton, Office of the Mayor. The case was then removed to the United States District Court by motion of Defendant, Corrections Corporation of America, on November 7, 2005. Defendant, District of Columbia, filed a Third Party Complaint to bring Center of Correctional Health & Policy Studies, Inc. ("CCHPS") into this case on May 9, 2006. Plaintiff's Complaint alleges assault and battery, negligence, negligent hiring and retention, violations of the Eighth Amendment, and negligent and intentional infliction of emotional distress.

Mr. Hines was incarcerated in the DC Jail from October 2002 to May 2003. At the time of his incarceration, the medical treatment for the inmates housed at the DC Jail was provided by personnel employed by the Center for Correctional Health & Policy Studies, Inc. ("CCHPS"). Plaintiff was treated for both hypertension and depression while incarcerated at the DC Jail. The medications prescribed for Mr. Hines during his incarceration included Inderal, Doxepin HCL, Maxzide, Sinequan, and Celexa.

During his deposition taken in this matter, Mr. Hines indicated that he had been diagnosed with hypertension when he was 28 years old, for which he was treated with the medication, Inderal. He was 39 years old when he was incarcerated at the DC Jail. He reported that he was taking Inderal for his hypertension during his intake examination, which occurred on October 8, 2002. Plaintiff refused to take his medication for both hypertension and depression during the better part of December 2002. The Plaintiff's medical records indicate that he had

stopped taking these medications approximately December 6, 2002. He agreed to take the medications again following a mental health examination dated December 26, 2002.

Mr. Hines was transferred from the DC Detention Facility of the DC Jail, to the Correctional Treatment Facility, on or about March 11, 2003, as a result of the need to be placed in Protective Custody. Prior to this transfer, Plaintiff was given a packet of medication for his high blood pressure, which he was to take once daily. This is noted in both the medical records for Mr. Hines, as well as his deposition, taken in this matter on September 1, 2006, on page 39. He testified that he did not know how many of these pills were given to him, but he knew it was more than fifteen (15) pills. See *Hines Deposition*, page 41-42, 48.

On April 29, 2003, Plaintiff alleges that he became dizzy and fell while in the shower, resulted in injuries to his head, back, and elbow. During his deposition, he testified that he had actually completed the shower and was dressed when he fell. See *Hines Deposition*, page 51. Following this incident, Plaintiff was taken to the George Washington University Hospital ("Hospital") by EMS for evaluation. Both head and spinal/cervical CTs were performed as part of the evaluation at the Hospital. The head CT showed no intracranial pathology, while the spinal CT showed degenerative arthritis. He was treated and released after approximately three hours and returned to CTF.

Mr. Hines was released from the DC Jail in May 2003 and returned to North Carolina. He testified during his deposition that he has not had a primary care physician since his release and he has only obtained his blood pressure medications after going to an emergency room and a community health center in North Carolina. (See *Hines Deposition,* page 31.) Further, Plaintiff testified that during the time period when he was first diagnosed with hypertension when he was

28, and when he was incarcerated at the age of 39, he only would take his blood pressure medication when he had the money for the pills. (See *Hines Deposition*, pages 34-35.)

### Plaintiff Has Failed to Designate Experts Necessary to Make a *Prima Facie* Case of Medical Negligence

Discovery was forwarded to counsel for Plaintiff in June 2006. The unexecuted responses to those discovery requests were received by the undersigned on January 8, 2007, pursuant to the Court's Order, compelling Plaintiff to respond to the discovery requests. The responses are attached hereto as Exhibit 1. Additionally, the Court's Scheduling Order of February 17, 2006, stated that Plaintiff was to file his expert disclosure statement by November 17, 2006. Plaintiff did not file an expert disclosure statement. Further, the Court is directed to Plaintiff's Answers to CCHPS' First Set of Interrogatories, page 7, where in response to Interrogatory number 16 requesting the names of any expert proposed to be called by Plaintiff, Mr. Hines states "I do not have the name of any experts, physicians or otherwise whom I propose to call as a witness in this case at this time."

Plaintiff can not prove a *prima facie* case of medical negligence without expert testimony. Without such an expert, Plaintiff can not establish a *prima facie* case of the existing, relevant standard of care, a deviation of that standard of care, and any damages that have proximately resulted therefrom.

In order for the Plaintiff to prove a medical malpractice/negligence claim in the District of Columbia, the Plaintiff has the burden to prove three elements: 1) an appropriate standard of care; 2) a deviation from that standard; and 3) a causal connection between any deviation and damages/injury claimed. (*See District of Columbia v. Wilson,* 721 A.2d 591 (D.C. 1998), *Riddick v. Washington Hospital Center, et al.,* 183 F.R.D. 327 (D.D.C. 1998); *Sponaugle v. Pre-*

*Term, Inc.,* 411 A.2d 366 (D.C. 1980). *Allen v. Hill,* 626 A.2d 875 (D.C. 1993), refers to the requirement on the part of Plaintiff for expert testimony, in order to meet the burden of proving the aforementioned elements of medical malpractice/negligence. The purpose of the requirement of expert testimony, is that the subject matter at issue is "not likely to be within the common knowledge of the average layman." (Quoting *District of Columbia v. Barriteau,* 399 A.2d 563, 569 (D.C. 1979). The case at bar is such a matter. The Plaintiff can not just simply state that he became dizzy because he was not given his blood pressure medication and this caused him to fall after he took his shower on April 29, 2003. No lay person would have the required knowledge to determine **what** caused Plaintiff to become dizzy as he has alleged, and fall after his shower. There is nothing in the medical records to support a complaint of dizziness by the Plaintiff at any time, including when he refused his medications during December 2002. Whether or not Mr. Hines became dizzy and fell on April 29, 2003, as a result of any failure to receive prescribed medication, or as a result of any other reason, such as heat from the shower, other medications that he may or may have been taking, his diet, or other potential reasons, are all matters beyond the ken of lay persons, and requires the testimony of medical professional experts who have specialized training and skills. Plaintiff admits that he has no one to provide this required expert medical testimony in this case. Therefore, judgment should be rendered in favor of Third Party Defendant, Center for Correctional Health & Policy Studies, Inc.

### **Plaintiff's Claims of Assault and Battery, Must Be Dismissed**

Plaintiff has included claims of assault and battery, in his Complaint. According to his responses to the discovery forwarded to Plaintiff by Defendant and Third Party Plaintiff, District of Columbia, page 4, the basis of Plaintiff's claims of assault and battery is based on his position that he was intentionally not given his blood pressure medication. See Exhibit 2, attached

hereto. As the Court is aware, an assault is defined as threat or use of force that would reasonable allow a person to fear bodily harm. Further, battery is defined as the use of force on another resulting in harmful contact. Based on the response of Plaintiff to Interrogatory 3 as described above, any alleged failure to provide medication to Plaintiff would not properly fall under the definition of either and assault or battery. No allegations of any excessive force or offensive touching has been described by the plaintiff in his Complaint. *Assuming arguendo* that the Court would accept that the facts of this case would fall under either, or both, of these torts, the claims must still be dismissed. The incident that is the subject of this lawsuit occurred on April 29, 2003. Further, Mr. Hines was released from the DC Jail in May 2003. However, he did not file his Complaint until August 2005. The law in the District of Columbia (DC Code §12-301 (4)) is that the torts of assault and battery carry a one year statute of limitations. Therefore, these claims must be dismissed as a matter of law.

### **Intentional Infliction of Emotional Distress**

Plaintiff has included a claim in his Complaint for intentional infliction of emotional distress. Plaintiff's responses to the interrogatories forwarded to him by the District of Columbia are attached hereto as Exhibit 2. Interrogatory number 24 requests that Plaintiff state the facts on which he bases his negligent and intentional infliction of emotional distress claim. Plaintiff's response is that Defendant "unreasonably and intentionally" failed to provide his blood pressure medication. This is the same position that he has taken with respect to the assault and battery claim.

In order to prove an intentional infliction of emotional distress claim, the plaintiff would need to prove three elements: 1) an "extreme and outrageous" conduct on the part of the defendant(s); 2) that this conduct is intentional or reckless; and 3) that said conduct causes the

plaintiff "severe emotional distress". *District of Columbia v. Thompson,* 570 A.2d 277, 289-290 (D.C. 1990). Further, this conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." (*Citing, Jackson v. District of Columbia,* 412 A.2d 948, 957 (D.C. 1980). The case at bar does not rise to such a level. Even *assuming arguendo* that plaintiff did not receive his medication as ordered, there is no evidence to support a claim of intentional infliction of emotional distress. There is nothing to support that any failure to provide this medication to Mr. Hines once he was transferred to CTF was the result of "extreme and outrageous" conduct that was "intentional or reckless" which resulted in "severe emotional distress". This claim must be dismissed as a matter of law.

## Eighth Amendment Claim

In conjunction with the arguments made above regarding the claim of intentional infliction of emotional distress, there is absolutely no evidence that the allegations made by Plaintiff would qualify for relief under the Eighth Amendment. There is no evidence, nor any expert testimony, to indicate that Plaintiff's medical needs were not taken care of in a reasonable manner, and within appropriate standards of medical care. In *Estelle, et al. v. Gamble*, *supra,* page 105, the Supreme Court ruled that under limited circumstance, the failure to provide medical care might state a cause of action under § 1983. The Court at page 104-105 stated as follows:

> "We therefore conclude that deliberate indifference to serious medical needs of prisoner constitutes the "unnecessary and wanton infliction of pain," *Gregg v. Georgia, supra*, at 173 (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's

> serious illness or injury states a cause of action under §1983."

In reaching its opinion, the Court was clear to point out that not every claim made by a prisoner that he/she has not received adequate medical care, states a §1983 violation. Comparing the medical claims to other Eighth Amendment claims, the Court, at page 105-106 stated:

> "Similarly, in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be 'repugnant to the conscience of mankind.' Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."

The Complaint filed herein, does not meet the requirements of properly stating a claim under §1983. None of the allegations stated in Plaintiff's Complaint rise to the level of an Eighth Amendment claim of "deliberate indifference" or "unnecessary and wanton infliction of pain." Even *assuming arguendo* that there was a gap in giving Plaintiff his high blood pressure after he was transferred to CTF, as he has alleged, there is no evidence that any such failure would rise to the "deliberate indifference" standard required to prove a violation of the Eighth Amendment. Further, without any expert testimony, Plaintiff can not prove that any such gap in medication resulted in the harm alleged or in any permanent injury.

WHEREFORE, for the reasons stated above, Third Party Defendant, Center for Correctional Health & Policy Studies, Inc., respectfully requests that this Court grant this Motion for Summary Judgment and dismiss this Third Party Defendant from this matter, with prejudice.

Respectfully submitted,

BRAULT GRAHAM, P.L.L.C.

　　　　/s/ Leo A. Roth, Jr.
LEO A. ROTH, JR.   #11604
110 South Washington Street
Rockville, MD  20850
(301) 424-1060
Counsel for the Center for Correctional Health and Policy Studies, Inc.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this  17th day of January 2007, the foregoing **Memorandum of Points and Authorities in Support of Motion of Third Party Defendant, the Center for Correctional Health & Policy Studies, Inc., for Summary Judgment,** was mailed, via first class mail to:

Shana Lyn Frost, Esquire
Asst. Attorney General for the District of Columbia
441 Fourth Street, N.W., 6th Floor South
Washington, DC  20001
Counsel for District of Columbia

Rudolph Acree, Jr., Esquire
1211 Connecticut Ave., NW, Suite 506
Washington, DC  20036
Counsel for Plaintiff

Daniel P. Struck, Esquire
Jones, Skelton & Hochuli
2901 North Central Avenue, Suite 800
Phoenix, AZ  85012
Counsel for Corrections Corp. of America, Inc.

Megan Starace Ben'Ary, Esquire
LeClair & Ryan
225 Reinekers Lane, Suite 700
Alexandria, VA 22314
Counsel for Corrections Corp. of America, Inc.

      /s/    Leo A. Roth
LEO A. ROTH, JR.