UNITED STATES DISTRICT FOR THE DISTRICT OF COLUMBIA
(CIVIL DIVISION)

| | |
|---|---|
| ANTHONY HINES | : |
| | : |
|     Plaintiff, | : |
| | : |
| v. | :   No. 05-2187 (RBW) |
| | : |
| CORRECTIONS CORPORATION OF AMERICA | : |
| | : |
| and | : |
| | : |
| DISTRICT OF COLUMBIA, Defendant and Third Party Plaintiff | : |
| | : |
| v. | : |
| | : |
| CENTER FOR CORRECTIONAL HEALTH AND POLICY STUDIES, INC. Third Party Defendant. | : |

……………………………………………………………………………………………………

**RESPONSE TO MOTION FOR SUMMARY JUDGMENT OF THIRD PARTY DEFENDANT, THE CENTER FOR CORRECTIONAL HEALTH & POLICY STUDIES, INC.**

    Plaintiff Mr. Anthony Hines, through counsel, respectfully moves this Honorable Court, to dismiss the Third Party Defendant's Motion for Summary Judgment. In support of this Motion, Anthony Hines, files the following Statement of Material Facts as well as an attached Memorandum of Points and Authorities.

                                                    Respectfully Submitted,

                                                    Rudolph Acree Jr.

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
(CIVIL DIVISION)

| | |
|---|---|
| ANTHONY HINES | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 05-2187 (RBW) |
| | : |
| CORRECTIONS CORPORATION OF AMERICA | : |
| | : |
| and | : |
| | : |
| DISTRICT OF COLUMBIA, Defendant and Third Party Plaintiff | : |
| | : |
| v. | : |
| | : |
| CENTER FOR CORRECTIONAL HEALTH AND POLICY STUDIES, INC. Third Party Defendant. | : |

……………………………………………………………………………………………………

**STATEMENT OF MATERIAL FACTS FOR WHICH PLAINTIFF ANTHONY HINES RELIES**

Mr. Anthony Hines, by and through counsel, makes the following Statement of Material Facts:

1. On or about October 6, 2002, Plaintiff Anthony Hines became an inmate under the D.C. Department of Corrections. (Plaintiff's Complaint P. 7- Attached to Motion)

2. Plaintiff Anthony Hines was initially housed at the D.C. Jail. (Plaintiff Complaint P. 7).

3. Plaintiff Anthony Hines thereafter moved to the Correctional Treatment Facility, a subsidiary of the Corrections Corporation of America under the D.C. Department of Corrections. (Plaintiff Complaint P. 7).

2

4. Plaintiff Anthony Hines has been, prior to his incarceration, diagnosed as an individual with high blood pressure and the prescription required that he take the medication daily. (Plaintiff Complaint P. 7).

5. During his incarceration at least 1 of Plaintiff Anthony Hines' prescriptions was filled but not administered at the Correctional Treatment Facility despite numerous requests. (Plaintiff Complaint P. 7).

6. Plaintiff Anthony Hines did not receive his prescribed daily blood pressure medication for approximately (30) days. (Plaintiff Complaint P.7)

7. On April 29, 2003, Plaintiff Anthony Hines "fell out" in and around the shower area. (George Washington University Hospital Emergency Department Medical Record 1, Form 75368A- Attached to Motion)

8. Plaintiff Anthony Hines was unconscious for an unspecified amount of time after the fall. (George Washington University Hospital Emergency Department Medical Record 1, Form 75368A)

9. Unidentified personnel notified the District of Columbia Fire and EMS

10. D.C. Fire and EMS personnel proceeded to take the blood pressure of a now conscious Mr. Hines. (District of Columbia Fire and EMS report generated on April 29, 2003- Attached to Motion)

11. Plaintiff Anthony Hines' initial blood pressure reading at 1:35pm was 190/86. (District of Columbia Fire and EMS report generated on April 29, 2003)

12. At arrival at George Washington University Hospital, Plaintiff Anthony Hines had a blood pressure reading of 192/92. (District of Columbia Fire and EMS

report generated on April 29, 2003; George Washington University Hospital Emergency Department Nursing Record II, Form 7 5082B).

13. While at George Washington Hospital, at 2:25pm, medical staff administered to Plaintiff Anthony Hines 0.1mg of Clonidine PO. (George Washington University Hospital Emergency Department Nursing Record II, Form 75082C- Attached to Motion)

14. At 3:00pm, X-rays and Cat-Scans were taken. (George Washington University Hospital Emergency Department Nursing Record II, Form 75082C)

15. At 3:30pm, Plaintiff Anthony Hines' blood pressure was taken and read 184/98. (George Washington University Hospital Emergency Department Nursing Record II, Form 75082C).

16. At 6:20pm, the medical staff at George Washington Hospital took Plaintiff Hines' blood pressure which read 132/80. (George Washington University Hospital Emergency Department Nursing Record II, Form 75082C).

17. On April 29, 2003, Plaintiff Anthony Hines was discharged at 7:40pm into police custody. (George Washington University Hospital Emergency Department Nursing Record II, Form 75082C).

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
(CIVIL DIVISION)

| | | |
|---|---|---|
| ANTHONY HINES | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No. 05-2187 (RBW) |
| | : | |
| CORRECTIONS CORPORATION OF AMERICA | : | |
| | : | |
| and | : | |
| | : | |
| DISTRICT OF COLUMBIA, Defendant and Third Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CENTER FOR CORRECTIONAL HEALTH AND POLICY STUDIES, INC. Third Party Defendant. | : | |

……………………………………………………………………………………………………

**MEMORANDUM OF POINTS AND AUTHPRITIES IN SUPPORT OF A RESPONSE TO THE MOTION FOR JUDGMENT OF THIRD PARTY DEFENDANT, CENTER FOR CORRECTIONAL HEALTH & POLICY STUDIES**

Mr. Anthony Hines, through counsel, moves this Honorable Court to dismiss the Motion for Summary Judgment of Third Party Defendant, Center for Correctional Health & Policy Studies. Plaintiff Anthony Hines states the following in support of Response to Motion for Summary Judgment:

**Standard of Review for Summary Judgment**

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." *Fed. R. Civ. P 56 (c); Anderson*

5

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "The district court should not resolve factual disputes of any moment on motions for summary judgment." *Koropoulos v. Credit Bureau, Inc.,* 734 F.2d 37, 42 (DC Cir. 1984).

All reasonable inferences must be drawn in favor of the non-movant Anderson 477 U.S. at 256. Additionally, the court must accept as true all well-pleaded allegations of fact in a plaintiff's complaint, construe the complaint in the light most favorable to the plaintiff, and determine whether "under any reasonable reading of the pleading, the plaintiff may be entitled to relief." *Colburn v. Upper Darby Township,* 838 F.2d 663, 665-66 (3d Cir. 1988). Moreover, the court may not consider the credibility or weight of the evidence in deciding a motion for summary judgment, even if the quantity of the moving party's evidence far outweighs that of its opponent. *Hairston-Lash v. R.J.E. Telecom, Inc.,* 161 F.Supp.2d 390, 393 (E.D. Pa. 2001) (quoting *Big Apple BMW, Inc. v. BMW of N. Am, Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992)). A complaint is properly dismissed only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

### Plaintiff Does Not Have to Designate an Expert in order to Sustain a Prima Facie Case of Medical Negligence

In order for the Plaintiff to sustain a claim for medical negligence in the District of Columbia, the Plaintiff must prove three elements: 1. an appropriate standard of care; 2. a deviation from that standard of care; and 3. a causal connection between any deviation and damages claimed. (*See District of Columbia v. Wilson*, 721 A.2d 591 (D.C. 1998), *Riddick v. Washington Hospital Center, et al.,* 183 F.R.D. 327 (D.D.C. 1998); *Sponaugle v. Term, Inc.,* 411 A.2d 336 (D.C. 1980). Defendant's counsel relies on *Allen*

6

*v. Hill,* 626 A.2d 875 (D.C. 1993) which reasons that there is a requirement on the part of the Plaintiff to provide expert testimony in order to meet their burden of proving the elements of medical negligence. The purpose of this requirement of expert testimony is that the subject matter at issue is "not likely to be within the common knowledge of the average layman." (*Quoting District of Columbia v. Barriteau*, 399 A.2d 563, 569 (D.C. 1979).

 The case at bar is distinguishable from that of *Allen. Allen* dealt with a number of intricate dental procedures which only dental professionals would have the required knowledge to understand and explain. The Court in *Eibl v. Kogan* indicated that "where the Plaintiff is exposed to a complex invasive procedure which required the application of both professional experience and highly technical equipment. It is therefore, a case in which the issue to be presented to the jury involved 'the merits and the performance of scientific treatment' and complex medical procedure and thus required 'expert testimony for its resolution'." *Eibl v. Kogan*, 494 A.2d 640, 643 (D.C. 1985).

 We have no invasive surgical procedure or the use of any highly technical equipment as is evident in both *Eibl* and *Allen.* What we do have, is a failure on the part of the Defendant to provide the Plaintiff with his required blood pressure medication in a timely manner which lead to him being taken to the George Washington Hospital for treatment. There is nothing within the set of facts in this case that is "not likely to be within the common knowledge of the average layman." (*Quoting District of Columbia v. Barriteau*, 399 A.2d 563, 569 (D.C. 1979).

 Plaintiff expects to have Dr. Yolanda Haywood, the Plaintiff's treating physician at the George Washington University Hospital on April 29, 2003, testify that his high

7

blood pressure levels upon his arrival to the hospital after his fall at the Correctional Treatment Facility was a result of the Defendants failure to administer high blood pressure medication to Plaintiff. Plaintiff became dizzy and collapsed because of his elevated blood pressure level.

Therefore, Defendant's motion for summary judgment should be denied as to this claim because the set of facts present in the case at bar does not require expert testimony.

### **Intentional Infliction of Emotional Distress**

In order to sustain a claim of intentional infliction of emotional distress, the Plaintiff must show three elements: 1. an "extreme and outrageous" conduct on the part of the Defendant(s); 2. that this conduct is intentional or reckless; and 3. that the conduct causes the Plaintiff "severe emotional distress". *District of Columbia v. Thompson*, 570 A.2d 277, 289-290 (D.C. 1990).

For an act to meet the "extreme and outrageous" prong of the intentional infliction of emotional distress, the courts require that "the conduct at issue must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Larijani v. Georgetown University*, 791 A.2d 41, 44 (D.C. 2002).

The facts in the case at bar does rise to such a level. On numerous sequential occasions, Mr. Hines requested that he be given his blood pressure medication. Despite these requests, Mr. Hines did not receive this medication. Mr. Hines was in a situation where he was at the mercy of the Defendant. He could not go out on his own to get this medication. He was forced to rely on the Defendant's to provide the blood pressure medication. Failure to take one's blood pressure may have disastrous effects namely

8

death. For the Defendant's to be so callous and disregard another's health does rise to the level of being "so extreme in degree, as to go beyond all possible bonds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

The conduct must be intentional or reckless. Even if the conduct may not rise to the level of intentional, there is no question as to the recklessness of the act on the part of the Defendant. The Defendant's, despite numerous requests by Mr. Hines, failed to give Mr. Hines his medication, without which it was a possibility that Mr. Hines could suffer a heart attack or even worse death. Failure to provide blood pressure medication to Mr. Hines, despite numerous requests, does rise to the level of reckless conduct on the part of the Defendant's.

Moreover, the conduct must cause severe emotional distress. Living with a potentially fatal disease alone may be enough to push someone over the edge. However, having the knowledge that there is some medication available to help one cope with the disease but it not being made available despite numerous requests can lead to severe distress. This is the case we have at bar. The Defendant's failure to provide Mr. Hines with his necessary blood pressure medication compounded an already depressed state of Mr. Hines.

Therefore, the court should deny the Defendant's motion for summary as to this claim because Mr. Hines can meet the required elements to sustain a claim of intentional infliction of emotional distress.

### **Eight Amendment Claim**

Plaintiff Anthony Hines can support a claim for an Eighth Amendment violation. The Court in *Estelle v. Gamble* states that:

9

> "deliberate indifference to serious medical needs of prisoners constitutes the" unnecessary and wanton infliction of pain," <u>Gregg v. Georgia, supra, at 173</u> (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs n10 or by prison guards in intentionally denying or delaying access to medical [*105] care n11 or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 104-105 (U.S. 1976)

If we are to follow this logic, it is fair to say that the case at bar does reach the level to sustain an Eighth Amendment claim. The Defendants failed to provide Mr. Hines with his blood pressure medication, that by itself, may not rise to the level of an Eighth Amendment violation, but the fact that Mr. Hines requested that he be provided with the medication and the Defendants still failed to comply does. This act is the sort of thing that the Court in *Estelle* referred to when it stated "an intentional denying or delaying of access to medical care." *Id.* By denying Mr. Hines' several requests for medication made the denial an intentional one which delayed his access to medical care.

The Court in *Estelle* further stated the following to expound on what exactly meet the requirements of an Eighth Amendment violation:

> "an inadvertent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain" or to be [*106] "repugnant to the conscience of mankind." Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment." *Id at* 105-106.

The act must not be inadvertent. The actions in the case at bar was anything but inadvertent. Inadvertent is failing to respond to one request of a prisoner; but to fail to respond to numerous moves from inadvertent to an intentional act.

Therefore, the court should dismiss the Defendant's motion for summary judgment as to this claim because the Defendant's actions do meet the level of deliberate indifference.

WHEREFORE, for the reasons stated above, the Plaintiff Mr. Anthony Hines respectfully requests that this Court deny Third Party Defendant, Center for Correctional Health & Policy Studies, Inc., Motion for Summary Judgment.

Respectfully submitted,

Rudolph Acree, Jr.
Counsel for Anthony Hines
1211 Connecticut, N.W.
Suite 506
Washington D.C. 20036

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of March 2007, the foregoing **Response to Motion of Third Party Defendant, the Center for Correctional Health & Policy Studies, Inc., for Summary Judgment,** was sent electronically to:

                Rudolph Acree, Jr.

Leo A. Roth, Jr.
110 South Washington Street
Rockville, MD 200850
Counsel for the Center for Correctional Health and Policy Studies, Inc.

Shana Lyn Frost, Esquire
Asst. Attorney General for the District of Columbia
441 Fourth Street, N.W., 6th Floor South
Washington, D.C. 20001
Counsel for District of Columbia

Daniel P. Struck, Esquire
Jones, Skelton & Hochuli
2901 North Central Avenue, Suite 800
Phoenix, AZ 85012
Counsel for Corrections Corp. of America, Inc.

Megan Starace Ben'Ary, Esquire
LeClair & Ryan
225 Reinekers Lane, Suite 700
Alexandria, VA 22314
Counsel for Corrections Corp. of America, Inc.

                Rudolph Acree, Jr.
                Counsel for Mr. Anthony Hines
                1211 Connecticut Ave, N.W.
                Suite 506
                Washington D.C. 20036